43 F.3d 1469
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel Lee FRANK, Defendant-Appellant.
 No. 94-5397.
 United States Court of Appeals, Fourth Circuit.
 Dec. 13, 1994.
Submitted: November 17, 1994.
Decided: December 13, 1994.
 
 Priscilla M. Rae, RAE, BERGSTROM & RAE, P.L.C., Virginia Beach, VA, for Appellant. Helen F. Fahey, United States Attorney, Robert E. Bradenham II, Assistant United States Attorney, Cynthia M. Shepherd, Assistant Commonwealth's Attorney, Brian G. Murphy, Third-Year Law Student, Norfolk, VA, for Appellee.
 E.D.Va.
 AFFIRMED IN PART AND DISMISSED IN PART.
 Before RUSSELL and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Daniel Lee Frank was convicted by a jury of conspiracy to distribute and to possess with intent to distribute marijuana, 21 U.S.C.A. Sec. 846 (West Supp.1994) (Count One), and of possession of marijuana with intent to distribute, 21 U.S.C.A. Sec. 841 (West 1981 & Supp.1994) (Count Two). He was acquitted of using or carrying a firearm in relation to a drug trafficking crime, 18 U.S.C.A. Sec. 924(c) (West Supp.1994) (Count Three). Frank appeals his 78-month sentence, contesting the district court's determination that he was a leader in the offense, USSG Sec. 3B1.1(a),[1] that fifty-five kilograms of marijuana were attributable to him, USSG Sec. 2D1.1, that a two-level enhancement was due for possession of a weapon during a drug offense, USSG Sec. 2D1.1(b)(1), and that he had not accepted responsibility, USSG Sec. 3E1.1. Frank also asserts that the district court should have departed below the guideline range. We affirm in part and dismiss in part.
 
 
 2
 Frank's girlfriend and co-defendant, Elizabeth Scagel, testified at trial that she and Frank began living together in Virginia Beach, Virginia, in late 1992. They went to New York (Scagel's previous home) for the New Year holiday and bought some marijuana from a source Scagel knew. Frank and Scagel returned a week later and bought a quarter pound of marijuana, which they then sold in Virginia Beach. Scagel testified that thereafter she and Frank made weekly trips to New York, buying a quarter pound of marijuana each time until the middle of March, when they increased the amount to two pounds a week. In May and June, they bought approximately four pounds a week. Beginning in July, they bought eight to ten pounds each week until their arrest in early September.
 
 
 3
 Scagel testified that "a long list" of Frank's friends helped them sell the marijuana. In August, after an attempted robbery at the house she and Frank shared with two of Frank's friends, Frank bought a .357 magnum revolver. Several more friends of his began staying at the house to make it more secure; one of them brought a sawed-off shotgun.
 
 
 4
 On September 7, 1993, police arrested Frank and Scagel as they were driving away from the house. They also executed a search warrant at the house, where co-defendant John Joseph Williams was arrested. In Scagel's Jeep, police found $6540 in cash. Frank was carrying $981 in cash. Four pounds, nine ounces of marijuana were found in the bathroom used by Frank and Scagel. A quarter pound of marijuana, packaged for sale, was in the bedroom used by Williams. The loaded .357 magnum was on the entertainment center in the living room, and the sawed-off shotgun was in the pocket of a jacket hanging in a downstairs closet.[2]
 
 
 5
 Defense counsel argued in Frank's sentencing hearing that no more than 44.7 kilograms (98 pounds) could be attributed to Frank based on Scagel's trial testimony, rather than 55.56 kilograms (122.5 pounds) as the probation officer recommended. After extensive testimony by the probation officer, the district court accepted the recommended figure of 55.56 kilograms, but noted that the base offense level would remain the same even if Frank's calculation was used. Under guideline section 2D1.1(c)(12), a base offense level of twenty applies when the offense involved 40-60 kilograms of marijuana. Accordingly, we find no clear error in the district court's determination of the base offense level.
 
 
 6
 Frank's attorney argued that the evidence showed that Scagel rather than Frank was the leader in the offense, because she was some years older than Frank and she initially introduced him to the source in New York. However, the district court determined that Frank was the leader because he arranged for the distribution of the marijuana in Virginia Beach through his many acquaintances. See USSG Sec. 2D1.1, comment. (n. 4) (factor relevant to leadership is degree of participation in planning or organization of offense). We review the court's factual finding for clear error. United States v. Harriott, 976 F.2d 198, 202 (4th Cir.1992). Whether Scagel could also have been found a leader in the offense is immaterial. The district court was not wrong in finding that Frank was a leader in that he, not Scagel, organized the distribution of an ever-increasing amount of marijuana in Virginia Beach.
 
 
 7
 Frank maintains that no enhancement for possession of a firearm was warranted because the .357 magnum he owned was just for protection and had no relation to the marijuana trafficking. Scagel testified that Frank bought the gun after two men forced their way into the house asking where "the stuff" was. The court found that Frank had the gun to protect himself and his marijuana. The enhancement should be made if a weapon is present during the offense, unless it is clearly improbable that the weapon is connected to the offense. USSG Sec. 2D1.1, comment. (n. 3). A weapon is possessed within the meaning of the guideline when it is present in a place where a drug conspiracy is carried on or furthered. United States v. Apple, 962 F.2d 335, 338 (4th Cir.1992) (Apple II ). The enhancement was clearly proper in this case.
 
 
 8
 The district court did not clearly err in finding that Frank had not accepted responsibility because the adjustment is not appropriate for a defendant who goes to trial contesting his factual guilt (as Frank did on all counts) except in unusual circumstances not present here. USSG Sec. 3E1.1, comment. (n. 2).
 
 
 9
 Frank did not request a downward departure, but argues that the court should have sua sponte departed because of the disparity between his sentence and Scagel's. We lack jurisdiction to review a refusal to depart. United States v. Bayerle, 898 F.2d 28, 31 (4th Cir.), cert. denied, 498 U.S. 819 (1990). In any case, disparity among the sentences of co-defendants is not a ground for departure absent evidence of actual prosecutorial misconduct. United States v. Fonville, 5 F.3d 781, 783-84 (4th Cir.1993), cert. denied, 62 U.S.L.W. 3754 (4th Cir.1994).
 
 
 10
 We therefore affirm the sentence imposed. That portion of the appeal which contests the district court's failure to depart is dismissed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED IN PART, DISMISSED IN PART
 
 
 [1]
 United States Sentencing Commission, Guidelines Manual (Nov.1993)
 
 
 [2]
 A dummy 8 mm pistol which could not be fired was also found in the entertainment center